UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEO JAMES BROOKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-862** |
| **MICHAEL J. ASTRUE, COMMISSIONER**<br>**SOCIAL SECURITY ADMINISTRATION** | **SECTION "I" (3)** |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.    BACKGROUND**

Plaintiff filed an application for a period of disability and for DIB on April 21, 2009, alleging a disability onset date of September 16, 2008. (Adm. Rec. at 20, 132-38). Plaintiff alleged disability due to degenerative disc disease of the lumbar spine, fusion surgery on L4-S1, depression, anxiety and dyslexia. (*Id.* at 22, 74). Plaintiff, born on April 1, 1963, was 45 years old on the date on which he alleged disability and 47 years old at the time of the final administrative decision. (*Id.* at 74, 132). Plaintiff has a ninth-grade education and is unable to read or write well. (*Id.* at 74, 164).

Plaintiff has past work experience as a self-sealing fuel tank builder. (*Id.* at 26).

Defendant initially denied plaintiff's application on June 2, 2009. (*Id.* at 74-7). Plaintiff sought an administrative hearing, which the agency held on February 8, 2010. (*Id.* at 34-71). Plaintiff and vocational expert ("VE") Patricia Knight both testified at the hearing.

On April 14, 2010, the administrative law judge ("ALJ") issued a decision in which he found that plaintiff did not meet the definition of disability through the date of the decision. (*Id.* at 20-8). In the decision, the ALJ concluded that plaintiff has the severe impairment of spinal fusion, "an impairment causing symptoms with limitations or restrictions having more than a minimal effect on the individual's ability to do basic, work-related activities." (*Id.* at 22). However, the ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 23). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work except "standing/walking restricted to 4 hours in an 8 hour day, sitting 6 hours; the claimant must avoid working around vibrations and can no more than occasionally read and do simple, repetitive job tasks." (*Id.*). He concluded that plaintiff could not perform his past work, but that, after consideration of plaintiff's age, education and work experience and in conjunction with the Medical-Vocational Guidelines, his RFC would not preclude performing work that exists in significant numbers in the national economy. (*Id.* at 27). The ALJ thus denied plaintiff's application for DIB. (*Id.* at 27-8).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he was not disabled. (*Id.* at 12). On January 10, 2011, the Appeals Council denied plaintiff's request. (*Id.* at 6-8). Plaintiff then timely filed this civil action.

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*,

67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.  ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step

4

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work

5

history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.   ISSUES ON APPEAL

There are two issues on appeal:

(1)   Whether substantial evidence supports the ALJ's evaluation of plaintiff's mental impairment.

(2)   Whether substantial evidence supports the ALJ's conclusion that plaintiff retains the ability to perform other work existing in significant numbers in the national economy.

## V.   ANALYSIS

### 1.   Whether substantial evidence supports the ALJ's evaluation of plaintiff's mental impairment.

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that his mental impairment is not severe. With regard to plaintiff's mental impairment, the ALJ ultimately concluded:

> Beverly Stubblefield, Ph.D., the claimant's treating and clinical psychologist conducted a psychological evaluation of the claimant on May 21, 2009. She concluded that the claimant carries a diagnosis of dysthymic disorder (Exh. 19F). Her progress notes also consistently show the claimant was assessed with only a dysthymic disorder. Thus, even though the claimant alleges in part an inability to perform work activities due to depression, anxiety and dyslexia, there is no evidence that show [sic] significant functional limitations compromised by symptoms of a psychiatric disorder. The claimant was able to perform substantial gainful activity at one company for some 21 years; he worked at another company prior to that. Hence, his dysthymic disorder had caused no significant mental obstacle to his employment history. Under the circumstances, the undersigned finds the claimant's allegation of depression, anxiety and dyslexia do not have more than a de minimis effect on his ability to perform work duties, and therefore, they are "non severe."

(*Id.* at 23). To reach this conclusion, the ALJ also relied on the Psychiatric Review Technique

6

performed by the State Agency's Medical Consultant, Lester Barnett, Ph.D. on May 26, 2009. (*Id.* at 403-16). Barnett found only a mild degree of limitation with regard to plaintiff's restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace. (*Id.* at 413). Barnett found no episodes of decompensation. (*Id.*).

Citing the progress notes of Beverly Stubblefield, Ph.D., plaintiff notes that he has low self-esteem due to his poor education and dyslexia and lacks "appropriate assertiveness." (Adm. Rec. at 307). Stubblefield administered to plaintiff the Minnesota Multiphasic Personality Inventory–2. (*Id.* at 454-55). Stubblefield ultimately diagnosed plaintiff with a dysthymic disorder and a global assessment of functioning ("GAF") of 50. (*Id.* at 455). Plaintiff contends that his GAF, in combination with Stubblefield's opinions that he can not perform routine tasks and is disabled, prohibits him from maintaining a job. Plaintiff maintains that this evidence supports a finding that his mental impairment is severe.

While the Court recognizes that a GAF score of 50 may mean that a person has no friends and is unable to maintain employment, substantial evidence supports the ALJ's conclusion here that plaintiff's mental impairment is not severe and fails to support plaintiff's claim of social reclusiveness.[1] The record reflects – and the ALJ noted – that plaintiff worked at Lockheed Martin Aerospace for 23 years. (Adm. Rec. at 23, 190). This evidence alone contravenes any opinion that plaintiff is unable to maintain employment. Indeed, plaintiff has known his wife for 26 years, a wife

---

[1] The Commissioner himself has declined to endorse the use of the GAF scale because the scale has no direct correlation to the severity requirements in the mental disorder listings. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).

7

who stated that they are "around each other all the time." (*Id.* at 170). Plaintiff and his wife both reported that they visit family. (*Id.* at 49-50, 170). And plaintiff testified that he goes to town once a week and to church once a week or every two weeks. (*Id.* at 59). Plaintiff further stated that "once in a while" he visits with others and goes out to eat with them. (*Id.* at 184).

Plaintiff contends that Stubblefield opined that he was disabled. Plaintiff is correct, but only in that Stubblefield opined that he was "physically disabled and should apply for social security disability benefits." (*Id.* at 455). But a physical disability diagnosis is not in her area of expertise as she is a psychologist. Moreover, a physician's ultimate opinion that a claimant is disabled – even that of a treating physician – is not entitled to controlling weight because whether or not a claimant is disabled is the ultimate province of the ALJ. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Stubblefield also opined that "[o]ccupational therapy should also be considered to help Mr. Brooks figure out how to do the things he likes in a more effective, less painful, less physical manner." (*Id.* at 455). That plaintiff may perform less physical work should he undertake occupational therapy does not support the notion that plaintiff can not perform any work due to his mental impairment.

Plaintiff also argues that the ALJ failed to follow the procedure to evaluate mental impairments as set forth in 20 C.F.R. § 404.1520a. Plaintiff contends that reversible error occurs when the agency fails to follow its own regulations. The Social Security regulations outline a process to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically-determinable mental

8

impairment. 20 C.F.R. §§ 404.1520a(b) (1), 416.920a(b)(1). Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad areas of functioning are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the ALJ determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id.* § § 404.1520a(d), 416.920a(d). When the ALJ finds no or only mild limitation in these four broad areas of mental functioning, the claimant's impairment generally is not found to be severe unless the evidence otherwise indicates more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ concurred with the findings of Barnett after he completed the Psychiatric Review Technique. As noted above, Barnett found only a mild degree of limitation with regard to plaintiff's restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (Adm. Rec. at 413). Because the ALJ "reache[d] the same conclusion," (*id.* at 23), as Barnett, and because Barnett considered the four areas on mental functioning under the regulations, it is axiomatic that the ALJ thus considered those same four areas. *White v. Astrue*, A. No. 4:08-CV-415, 2009 WL 763064, *10 (N.D. Tex. Mar. 23, 2009). There is no error here.

Lastly, plaintiff maintains that the ALJ's RFC assessment failed to encompass all of the limitations imposed by plaintiff's mental impairment. But that is not the case. The ALJ explicitly

9

found that plaintiff "can no more than occasionally read and do simple, repetitive job tasks." (Adm. Rec. at 23). The ALJ thus took into account any limitations imposed by plaintiff's mental impairment in his RFC assessment by limiting any reading required on the job.

> 2. **Whether substantial evidence supports the ALJ's conclusion that plaintiff retains the ability to perform other work existing in significant numbers in the national economy.**

Under this rubric, plaintiff advances numerous arguments. Plaintiff first contends that the ALJ should have determined that he is illiterate. Plaintiff maintains that the evidence supports a finding that he can not read on the job, even on the "occasional" basis as found by the ALJ. As noted above, plaintiff has a ninth-grade education. (*Id.* at 74, 164). Under the regulations, a person with a ninth-grade education has a limited education. 20 C.F.R. § 404.1564(b)(3). Plaintiff also completed vocational training and earned a certificate in carpentry/woodworking. (*Id.* at 174). Further, plaintiff testified at the administrative hearing that he can read the headlines and one or two paragraphs of an article in the newspaper and scriptures from the Bible. (*Id.* at 45).

Plaintiff also admitted in his application materials that he can read and understand English and write more than his name in English. (*Id.* at 156). He and his spouse also stated that he had a "good" ability to follow written instructions. (*Id.* at 175, 185). Plaintiff also uses his computer on a daily basis. (*Id.* at 184). Plaintiff thus has a limited education, and the ALJ did not err when he failed to find plaintiff illiterate.

Plaintiff next argues that the ALJ erred when he failed to apply the grid rule for sedentary work. The ALJ concluded that plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except standing/walking

restricted to 4 hours in an 8 hour day, sitting 6 hours; the claimant must avoid working around vibrations and can no more than occasionally read and do simple, repetitive job tasks.

(*Id.* at 23). Noting that the ALJ restricted plaintiff's standing and/or walking to four hours in an eight-hour day, plaintiff argues that the can not perform the full range of light work because such work requires standing and/or walking for six hours in an eight-hour day. 20 C.F.R. § 404.1567(b). Plaintiff thus contends that the ALJ should have applied the grid rule for sedentary work because plaintiff's RFC assessment does not meet all of the strength demands for light work. Plaintiff maintains that the ALJ should have applied grid rule 201.17.[2]

The Court finds that grid rule 201.17 does not apply here. First, grid rule 201.17 is applicable only when the plaintiff is illiterate or unable to communicate in English. As noted above, the Court has found that substantial evidence supports the finding that plaintiff has a limited education and is not illiterate. In addition, grid rule 201.17 applies only when the plaintiff is unskilled. The ALJ concluded that plaintiff had 23 years of experience in his past relevant work that was semi-skilled with a specific vocational preparation ("SVP") of 4. (*Id.* at 23, 25, 26). Accordingly, plaintiff is not unskilled. For these reasons, grid rule 201.17 is inapplicable here.

Lastly, plaintiff contends that substantial evidence does not support the ALJ's finding that he retains the ability to perform other work existing in significant numbers in the national economy. At the administrative hearing, the ALJ posed a hypothetical to the VE that included all of the

---

2 There appears to be a typographical error in plaintiff's memorandum in that plaintiff at one point argues that grid rule 201.18 should apply. But grid rule 201.18 directs a finding of *not disabled*. Thus even were the Court to apply grid rule 201.18, a finding of not disabled would be appropriate.

limitations indicated in his RFC assessment and asked her whether work existed in significant numbers in the national economy. (*Id.* at 62). The VE listed security positions, cashiers and counter and rental clerks. (*Id.* at 63). She reduced the number of positions by forty, fifty and fifty per cent, respectively, based on the limitation that plaintiff can stand and/or walk for only four hours of an weight-hour workday. (*Id.*). The VE also listed sedentary positions in response to the hypothetical. (*Id.* at 63-64).

When counsel for plaintiff clarified that the reading required on any job was to be no more than on an occasional basis, the VE initially testified that that would not "change anything though." (*Id.* at 65). When counsel for plaintiff further limited plaintiff's limitation by stating that reading was difficult for plaintiff and that plaintiff read slow, the VE further limited the number of positions in the national economy by eighty-five to ninety per cent. (*Id.* at 65-66).

Plaintiff thus argues that with regard to the VE's testimony, there are no jobs that exist in significant numbers in the national economy that plaintiff can perform. It is well-established law, however, that the ALJ need not rely on VE testimony that is based on evidentiary assumptions that the ALJ later concludes is unsupported by the objective medical evidence. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). As noted above, plaintiff has a ninth-grade education. (Adm. Rec. at 74, 164). Under the regulations, a person with an ninth-grade education has a limited education. 20 C.F.R. § 404.1564(b)(3). Plaintiff also completed vocational training and earned a certificate in carpentry/woodworking. (*Id.* at 174). Indeed, the ALJ noted that plaintiff had performed his past relevant work in a semi-skilled level 4 job that requires a reading level of 3, which is equal to a high-

school level of reading. (*Id.* at 25).[3] Further, plaintiff testified at the administrative hearing that he can read the headlines and one or two paragraphs of an article in the newspaper and scriptures from the Bible. (*Id.* at 45).

Plaintiff also admitted in his application materials that he can read and understand English and write more than his name in English. (*Id.* at 156). He and his spouse also stated that he had a "good" ability to follow written instructions. (*Id.* at 175, 185). Plaintiff also uses his computer on a daily basis. (*Id.* at 184). The ALJ thus concluded that plaintiff is not illiterate and refused to limit plaintiff's limitations to those outlined by his counsel at the administrative hearing, finding that objective evidence did not support such a limitation. The Court thus finds that substantial objective evidence supports this conclusion.

## VI. CONCLUSION

Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's conclusions here. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after

---

[3] For this same reason, the Court rejects plaintiff's argument that the VE erred when she listed three positions with an SVP of 2 after testifying that someone with plaintiff's limitations is limited to work with an SVP of 1. Plaintiff worked for over 23 years at a job with an SVP of 4.

being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this 9th day of August, 2012.

                              **DANIEL E. KNOWLES, III**
                              **UNITED STATES MAGISTRATE JUDGE**